Frederick Backer, J.
Defendants move to dismiss the complaint pursuant to subdivision 4 of rule 106 of the Buies of Civil Practice upon the ground that it does not state facts sufficient to constitute a cause of action The complaint sets forth a single cause of action and is framed as one at law for money-damages for breach of a contract of joint venture.
The following essential facts are pleaded: A corporation by the name of Orange Blossom Estates, Inc. (hereinafter referred to as Orange Blossom), and which is not a party to or involved in this action, owned a large tract of land near Sebring, Florida. It desired to sell this land to the public. To accomplish this purpose, it entered into a written contract, dated September 2, 1958 (Exhibit B annexed to complaint), with a company known as Grlenmark, Incorporated, which is one of the five plaintiffs herein. Grlenmark was to prepare and conduct an advertising promotion program, and to do certain administrative work in helping to dispose of Orange Blossom’s lands. Subsequently, and on November 20, 1958, Grlenmark entered into a written contract with the four other plaintiffs and with the two defendants in this action. This contract is designated as Exhibit A annexed to the complaint. It was an agreement of joint venture. By it, Grlenmark and all of the other contracting parties jointly undertook to exploit the advertising promotion contract theretofore entered into between Grlenmark and Orange Blossom. By the terms of the joint venture contract, the defendants Oarity and Hoffman were to contribute 50% of the capital and 50% of the expenses required for the venture. Two plaintiffs, Mr. and Mrs. Tyarks, were to contribute a total of 12%% for the same purposes, and each of the three other plaintiffs obligated themselves for like percentages. Profits and losses were to be shared on the same basis.
The complaint further pleads that, while all of the joint venturers were engaged in the advertising campaign to sell *1067 the lands of Orange Blossom, and in February of 1959, they orally agreed to the following (par. “Ninth” of complaint): “that they would extend the provisions, terms, promises and conditions of joint venture contained in Exhibit ‘ A ’, and make the same applicable to, and governing, a second, separate and distinct enterprise or deal which they would create, and which would consist of finding another parcel of land in Florida suitable for development in the same manner, and for the same purposes, as the Orange Blossom lands; then find a developer to purchase said lands for development in the same manner and for the same purposes as the Orange Blossom lands were being developed; and in consideration, of finding such land for a proposed developer, to obtain from him a contract in the name, and for the benefit of the Joint Venturers upon terms and conditions similar to those contained in Exhibit 1 B so that the Joint Venturers might sell said second parcel of land for the developer by the same type of sales advertising campaign as was being used to sell the Orange Blossom lands, all of which was to be done by the Joint Venturers so that each of them might profit from conducting such sales advertising campaign, to the same extent as he was to profit under the terms of Exhibit ‘A’”.
The complaint goes on to allege that after entering into this afore-stated oral contract in February of 1959, the joint venturers found another parcel of land located near Dunellan, Florida, hereinafter referred to as “ Rainbow Ranch lands that they thereupon began negotiating with two land developers to purchase these lands and to have those two prospective developers contract with the joint venturers to help sell the land under an advertising promotion contract to be entered into upon terms similar to those contained in the Orange Blossom promotion contract of September 2, 1958; that the joint venturers aided the two prospective land developers to contract for the purchase of the Rainbow Ranch lands; that thereupon the defendants began to negotiate with them, on behalf of the joint venturers, the terms of an advertising promotion contract similar to Exhibit B; that while the defendants were so negotiating, and on July 2, 1959, they breached their fiduciary obligations to the plaintiffs, who were their fellow venturers, by secretly and surreptitiously executing the new advertising promotion contract with the developers in their own names (Exhibit “ O ” annexed to complaint); that following this breach of fiduciary obligation, the defendants offered to let plaintiffs participate with them in the promotion of sales of Rainbow Ranch lands provided that the defendants’ interest in the joint *1068 venture was fixed at 51%, instead of the 50% which defendants had under the first joint venture, and, that defendants be made the managers for exploitation of the second advertising promotion contract; that when plaintiffs refused to accede to these demands, the defendants excluded them from participation in the Rainbow Ranch deal.
These then are the essential and material allegations of plaintiffs’ complaint against the defendants. The action is brought on the law side of this court’s jurisdiction, for plaintiffs seek recovery only of money damages for defendants ’ acts and breach of their fiduciary relationship.
Defendants contend the complaint is dismissible by reason of the Statute of Frauds. They argue that the pleaded oral joint venture agreement comes within the application and bar of the provisions of subdivision 1 of section 31 of the Personal Property Law, because, by its terms, they urge the contract was not to be performed within one year from the date of the making thereof. This contention, however, is untenable since a familiar rule of law has established that, where a contract by its terms provides that all of the parties thereto have the privilege of ending their contractual relations and terminating the contract, within a year, the contract is without the application of the statute (Blake v. Voigt, 134 N. Y. 69, 72-74). Improbability or unlikelihood of complete performance within the year is no criterion. All that matters is that the contract admit of performance within the year (Blake v. Voigt, supra; Kent v. Kent, 62, N. Y. 560, 564; Elsfelder v. Cournand, 270 App. Div. 162, 164). Examining the instant complaint we find it pleads specifically that the provisions of the earlier, but written, joint venture contract of November 29, 1958 (Exhibit A), were to govern and apply to the later, and oral, joint venture contract of February, 1959. For the purposes of this motion, it must be assumed that this allegation is true for basic principles, applicable to a motion to dismiss for insufficiency, pursuant to rule 106 of the Rules of Civil Practice, are that the plaintiffs are entitled to the benefit of every favorable inference that may be drawn from the complaint (Condon v. Associated Hosp. Serv., 287 N. Y. 411, 414), and that the facts as alleged must be deemed true (Garvin v. Garvin, 306 N. Y. 118, 120), and the court must assume the truth of every material allegation of fact contained in the complaint (Kane v. Walsh, 295 N. Y. 198, 203; Nevins, Inc., v. Kasmach, 279 N. Y. 323, 325; Lamb v. Cheney & Son, 227 N. Y. 418, 420). Turning therefore to Exhibit A, we find it contains a provision which might have resulted in termination of the contractual relations prior to a *1069 year from the date thereof. Paragraph 11 provides that any of the joint venturers may retire from the venture by giving at least 90 days’ written notice by registered mail to all the other joint venturers, and thereupon there would have to be an accounting and distribution of assets to the withdrawing party in proportion to his capital contribution.
Joint ventures are subject to, and governed by, the same rules as partnerships. (King v. Barnes, 109 N. Y. 267, 285; Spier v. Hyde, 92 App. Div. 467, 472; Brown v. Leach, 189 App. Div. 158, 163; Underhill v. Schenck, 238 N. Y. 7, 14; Friedman v. Gettner, 6 A D 2d 647, 648.) Section 60 of the Partnership Law provides that “ The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business ”. Accordingly, the provision in Exhibit A, which gave to anyone and all of the joint venturers the privilege of retiring upon 90 days ’ notice, could have ended the contractual relations of the agreement, and marked a dissolution and termination of the venture, within one year from the date of the contract. As stated in Blake v. Voigt (supra, p. 73): “ The contingency did not defeat the contract, but simply advanced the period of fulfillment.”
We come now to defendants’ contention that the pleaded oral agreement of joint venture is prohibited by subdivision 1 of section 33-c of the Personal Property Law, which reads as follows : “ 1. A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent ’ ’. Defendants point to paragraph 19 of the written contract (Exhibit A), which provides that it “may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.” By this, defendants, therefore, argue that the oral contract set forth in the complaint is not a new, or second, contract of joint venture (as plaintiffs maintain it is), but, merely a change in the written agreement; that being a change by oral contract it violates paragraph 19 of the written contract and thereby also violates subdivision 1 of section 33-c of the Personal Property Law. Defendants’ arguments in this aspect of their motion are untenable. Plaintiffs flatly take the position that their complaint does not plead that the February, 1959 oral contract of joint venture effected a change in the first contract of joint *1070 venture, but, that it definitely pleads an entirely new and second joint venture, to be conducted and governed by the terms contained in the earlier written contract. The language of paragraph “Ninth” of the complaint that the parties contracted in February, 1959 for “ a second, separate and distinct enterprise or deal ” is sufficiently corroborative of plaintiffs’ position and warrants denial of defendants’ motion in this aspect.
Even if this were not so, arguendo, plaintiffs’ position must be sustained if the complaint be read as a whole, as is required on a motion to dismiss for insufficiency (Calvo v. Davies, 73 N. Y. 211, 218), and if read in the light of the business situation and relationship of the parties as revealed by the complaint and the annexed contracts. The complaint charges defendants with a serious breach of trust and of fiduciary obligations to their fellow joint venturers. Case law amply testifies that the courts have been diligent in protecting those betrayed by fiduciaries and have held that joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the highest loyalty (Meinhard v. Salmon, 249 N. Y. 458; Underhill v. Schenck, supra; Brown v. Leach, 189 App. Div. 158, 164, supra). Pleadings should be broadly and liberally construed to achieve substantial justice. The Civil Practice Act (§ 275) so directs, and calls for a liberal construction with a view to substantial justice between parties, and precedents so dictate (Wainwright & Page, Inc., v. Burr & McAuley, Inc., 272 N. Y. 130, 132; Condon v. Associated Hosp. Serv., 287 N. Y. 411, 414, supra). The rule should be particularly heeded when fiduciary malfeasance is charged. Semantical imperfections should not control.
The defendants next argue that the complaint should be dismissed because plaintiffs have brought an action at law for damages, whereas their remedy should be one in equity for an accounting. I find no merit to this. Where an agreement of partnership or joint venture is breached before any business is done thereunder, as where one of the partners or joint venturers is excluded by another, there is no need to resort to equity for an accounting. There is nothing to be accounted for. In such cases, an action at law for damages will lie (Crownshield Trading Corp. v. Earle, 200 App. Div. 10, 14-16; Burnstine v. Geist, 257 App. Div. 792).
Defendants further argue that the pleaded oral agreement of joint venture is unenforcible because its essential-terms are not stated with a reasonable degree of certainty. They object to the absence of allegations stating who was to perform the new joint venture contract, of what the subject matter thereof *1071 was to be. There is no merit to these captious arguments of the defendants. The complaint alleges that the terms of the oral joint venture agreement were to be those of Exhibit “ A ”, and those are clear, definite and certain. Further, the complaint pleads with clarity and certainty that all the joint venturers were to engage in seeking another parcel of land to develop, so that all of them might benefit by an ensuing advertising promotion contract.
Another argument pressed by the defendants is that the oral agreement of February, 1959 is invalid for what they term partial failure of consideration. The argument has no merit and is untenable. It rests on a provision in paragraph 5 of Exhibit “A ”, which states, in substance, that Mr. and Mrs. Tyarks, two of the five plaintiffs herein, were to submit for use, in the first joint venture, the so-called “Harían” list of names of persons who might be solicited to purchase Orange Blossom Estate lands. Based on the proviso that “ the parties hereto (the joint venturers) shall have the exclusive right to use the Harían List for the purposes of this Venture ”, the defendants argue that inasmuch as the list was to be used exclusively for the first venture, it could not be used for the second venture. Hence, Mr. and Mrs. Tyarks could not furnish it as consideration moving from them to the other parties in the second contract. Defendants claim this constituted partial failure of consideration which makes the second contract wholly unenforcible. Obviously, if the list could not be furnished as consideration at the time of formation of the second contract, there is involved a want of consideration, not a failure of consideration. In any event, the argument is not well taken. The first, written joint venture contract, required Mr. and Mrs. Tyarks to furnish not only the Harían list, but to contribute 12%% of the capital and 12%% of the operating expenses, and to share losses, if any, to that extent. Since the complaint alleges that the second venture was to be on the same terms as the first, Mr. and Mrs. Tyarks would have been obliged to contribute similar amounts of capital and expense moneys, and share losses to the same extent, in the second venture. These would have been substantial considerations, separate and apart from the Harían list, and they would have made the entire agreement enforcible even as to the Tyarks. That would be equally true whether the supposed incapacity to furnish the Harían list be viewed as partial want of consideration, or as partial failure of consideration. So long as the Tyarks were capable of furnishing any of the considerations required of them, there was no want of consideration (see 1 Corbin, *1072 Contracts, § 126; Restatement, Contracts, § 84, cl. [b] and “comment” thereon; 12 Am. Jur., Contracts, § 118). The result would have been the same had partial failure of consideration been involved (17 C. J. S., Contracts, § 130).
I, therefore, conclude that the complaint, as framed, states a sufficient cause of action to recover damages for breach of a contract of joint venture. Consequently the motion to dismiss is denied. Defendants may serve their answer within 20 days after the service of the order hereon, with notice of entry.